UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SCOTT C. WOLF,

        Plaintiff,

   v.

LIFE INSURANCE COMPANY OF NORTH AMERICA,

        Defendant.

CASE NO. C20-5684 BHS

ORDER ON PARTIES' CROSS-MOTIONS FOR JUDGMENT

This matter comes before the Court on Defendant Life Insurance Company of North America's motion for judgment under Rule 52, Dkt. 16, and Plaintiff Scott C. Wolf's motion for summary judgment, Dkt. 17.[1] The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby denies LINA's motion and grants Wolf's motion for the reasons stated herein.

---

[1] Both Wolf and his deceased son are named "Scott Wolf." The Court refers to Plaintiff as "Wolf" and his deceased son as "Scott" for clarity.

ORDER - 1

# I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

## A. Overview

Wolf's son Scott died in a car accident. Scott had consumed alcohol and was driving at high speed the wrong way down a one-way road. He hit a speed bump and lost control of his car. The car hit large rocks on the side of the road and flipped over, landing upside down in the bay adjoining the road. Tragically, Scott drowned. He was 26 years old.

Wolf claimed accidental death benefits under his LINA insurance policy. LINA denied benefits, contending that because Scott was intoxicated and driving recklessly, the death was foreseeable and thus not a covered loss.

## B. Background

Wolf has LINA Accidental Death and Dismemberment insurance coverage through his employer. Dkt. 15-1 at 76.[2] His son Scott was insured under the policy for $50,000 in AD&D benefits. The policy requires that a "Covered Loss" be "the result, directly and independently of all other causes, of a Covered Accident." *Id.* at 181. The policy defines a "Covered Accident" as "[a] sudden, unforeseeable, external event that results, directly and independently of all other causes, in a Covered Injury or Covered Loss." *Id.*

The car accident at issue occurred at 4:00 am in Clearwater, Florida. *Id.* at 146. According to two witnesses, Scott was driving at approximately 70–80 miles per hour

---

[2] Dkt. 15-1 contains the sealed administrative record. The Court cites the ECF page numbering.

with his hazard lights on, going the wrong way down a one-way causeway with a posted speed limit of 10 miles per hour. *Id*. at 114, 148. He hit a speed bump, lost control of the car, overcorrected, and his car left the road and struck tree stumps. *Id*. at 114, 152. The car then went over large rocks between the road and the bay, striking one and landing upside-down in the water. *Id*. at 152. Scott was wearing his seatbelt. *Id*. at 150. A police officer pulled him from the vehicle and gave first aid. *Id*. He was transported to the hospital where he was pronounced dead. *Id*.

The Hillsborough County Medical Examiner performed an autopsy. *Id*. at 156. The cause of death was drowning, and the manner of death was "[a]ccident – (Drove automobile off roadway into bay while intoxicated)." *Id*. Scott had an ocular fluid alcohol level of .17% and a blood alcohol level of .20%. *Id*.

Wolf submitted a claim for accidental death benefits under his insurance policy. *Id*. at 77–78. LINA denied coverage, concluding that Scott's death "was a foreseeable outcome of his voluntary actions, and thus, the loss was not a result of a Covered Accident." *Id.* at 53. Wolf appealed, contending that if LINA "wanted to exclude coverage for accidental deaths arising from negligent or even reckless conduct on behalf of the deceased they should have stated so in plain English," and emphasizing that the death certificate indicated death by accident and drowning. *Id*. at 48.

Theodore Siek, Ph.D, a Forensic Toxocologist, reviewed the records for LINA as part of its review of the appeal. *Id*. at 36. He concluded that Scott's "driving ability, his attitude about safety, and ability to rescue himself from drowning were all significant factors in his accident and drowning death." *Id.* LINA upheld its denial of benefits,

explaining that a reasonable person with a background and characteristics similar to Scott's "would have viewed the resulting death as a probable consequence substantially likely to occur." *Id*. at 26–28.

Wolf sued LINA for benefits under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1132(a), (e), (f) and (g). Dkt. 1. Wolf also seeks pre- and post-judgment interest and attorneys' fees and costs. *Id*.

The parties informed the Court that they would file simultaneous cross-motions and responsive briefs and proposed that the Court's judgment be entirely on the trial briefs and the Administrative Record. Dkt. 8 at 4.

On March 1, 2021, LINA moved for judgment under Federal Rule of Civil Procedure 52, Dkt. 16, and Wolf moved for summary judgment under Federal Rule of Civil Procedure 56, Dkt. 17.[3] On March 22, 2021, the parties filed response briefs. Dkts. 18, 19. On March 24, 2021, LINA filed a surreply and motion to strike, Dkt. 22, and on March 29, 2021, Wolf filed a brief opposing the motion to strike, Dkt. 23.

## II. DISCUSSION

The parties dispute whether Scott's death was a "sudden, unforeseeable, external event"—i.e., a Covered Accident. Wolf contends that the majority of ERISA cases holding a death is not accidental are cases where the insured's conduct amounts to committing or attempting to commit suicide. LINA did not invoke a suicide exclusion.

---

[3] Though the parties moved under different Federal Rules, they agree that the de novo standard of review for denial of benefits in an ERISA case applies. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)

LINA contends that the great weight of authority "recogniz[es] that the dangers of drunk driving are 'well known,' and that deaths occasioned by drunk driving are often <u>not</u> unforeseeable accidents in the AD&D policy context." Dkt. 19 at 2 (emphasis in original).

**A.     Standard of Review**

"The district court reviews a challenge to an ERISA plan's denial of benefits de novo 'unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *Opeta v. Nw. Airlines Pension Plan for Cont. Emps.*, 484 F.3d 1211, 1216 (9th Cir. 2007) (quoting *Firestone Tire*, 489 U.S. at 115). If the plan "confer[s] discretionary authority as a matter of contractual agreement, then the standard of review shifts to abuse of discretion." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (en banc) (citing *Firestone Tire*, 489 U.S. at 115).[4]

The parties agree that de novo review applies here. When de novo review applies, "[t]he court simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits.'" *Opeta*, 484 F.3d at 1217 (quoting *Abatie*, 458 F.3d at 963). The difference in the standards is significant. *See HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 994 (11th Cir. 2001), *overruled in part on other grounds by Doyle v. Liberty Life Assur. Co. of Bos.*, 542 F.3d 1352 (11th Cir. 2008)

---

[4] "In ERISA cases, the phrases 'arbitrary and capricious' and 'abuse of discretion' are used interchangeably." *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 n.5 (11th Cir. 2011) (citing *Jett v. Blue Cross & Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1139 (11th Cir. 1989)).

("We cannot over emphasize the importance of the discretion afforded the claims administrator; the underlying premise of arbitrary and capricious, rather than *de novo*, review is that a court defers to the discretion afforded the claims administrator under the terms of the plan.").

"[W]hen the court reviews a plan administrator's decision under the de novo standard of review, the burden of proof is placed on the claimant." *Muniz v. Amec Const. Mgmt., Inc.*, 623 F.3d 1290, 1294 (9th Cir. 2010). In other words, the plaintiff has the burden to show his claim falls within the scope of coverage. *Id*. "Under the federal common law of ERISA," courts "'interpret terms in ERISA insurance policies in an ordinary and popular sense as would a person of average intelligence and experience.'" *Padfield v. AIG Life Ins. Co.*, 290 F.3d 1121, 1125 (9th Cir. 2002) (quoting *Babikian v. Paul Revere Life Ins. Co.*, 63 F.3d 837, 840 (9th Cir. 1995)).

**B.    LINA Improperly Denied Benefits**

    **1.    Accidental Death Under ERISA**

It is undisputed that *Wickman v. Northwestern National Insurance Company*, 908 F.2d 1077, 1088 (1st Cir. 1990) is the leading authority on whether an accident is foreseeable under an ERISA-governed AD&D policy. *See* Dkt. 17 at 12; Dkt. 19 at 4. In *Wickman*, the decedent had climbed over or through a bridge guardrail, stood on the outside edge of the bridge holding on with only one hand, and then fallen to at least forty feet to the railroad tracks below. 908 F.2d at 1080. He was transported to the hospital and died later that evening. *Id*. The policy defined an accident as "'an unexpected, external, violent and sudden event.'" *Id*. at 1081. It excluded benefits for losses directly or

indirectly caused by "'suicide or intentionally self-inflicted injury, whether . . . sane or insane.'" *Id*.

The First Circuit considered whether the plaintiff was due benefits if the decedent "climbed over the guardrail without any intent to kill or injure himself but fell inadvertently," thus "delv[ing] into the metaphysical conundrum of what is an accident." *Id*. at 1084. To illustrate, it noted that courts have held that deaths in games of Russian roulette "regardless of actual expectation or intention, were not accidental." *Id*. at 1087 (collecting cases). It held that "[i]f the fact-finder determines that the insured did not expect an injury similar in type or kind to that suffered, the fact-finder must then examine whether the suppositions which underlay that expectation were reasonable." *Id*. at 1088. This should be done "from the perspective of the insured, allowing the insured a great deal of latitude and taking into account the insured's personal characteristics and experiences." *Id*. (collecting cases). If the evidence is insufficient to determine subjective expectation, the factfinder should then consider "whether a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct." *Id*. (citing *City of Carter Lake v. Aetna Cas. & Sur. Co.*, 604 F.2d 1052, 1048–59 & n.4 (8th Cir. 1979)).

The Ninth Circuit adopted this test in *Padfield v. AIG Life Insurance Company*, modifying the standard for the insured's expectation. 290 F.3d at 1126–27. It noted that courts use various formulations to indicate the degree of certainty with which an insured must expect injury for an injury to be nonaccidental, but concluded that "the 'substantially certain' test is the most appropriate one, for it best allows the objective

inquiry to 'serve [ ] as a good proxy for actual expectation.'" *Id*. at 1127 (citing *Wickman*, 908 F.2d at 1088; *Todd v. AIG Life Ins. Co.*, 47 F.3d 1448, 1456 (5th Cir. 1995)) (alternations in original)).

In *Padfield*, the policy provided an accidental death benefit for injury, defined as "bodily injury caused by an accident . . . as to the person whose injury is the basis of the claim and resulting directly and independently of all other causes in a covered loss." *Id*. at 1124. The policy excluded "any loss caused in whole or in part by . . . suicide or any attempt at suicide or intentionally self-inflicted injury or any attempt at intentionally self-inflicted injury." *Id*. The policy did not give the administrator discretion to determine benefits or construe the plan, so the Circuit applied de novo review. *Id*. at 1125.

The decedent in *Padfield* died while engaging in autoerotic asphyxiation. *Id*. The coroner's report stated that the death appeared to be an accidental result of the practice and stated that the cause of death was hanging. *Id*. The insurer invoked the suicide/self-inflicted injury exception and denied coverage. *Id*.

The Ninth Circuit held that the record required a conclusion that the decedent's death was accidental and not a suicide under the policy because autoerotic asphyxiation practitioners expect to survive, there was no evidence the decedent expected otherwise, he had some history of engaging in the practice and surviving it, and there was no evidence that he was distraught or experiencing personal problems. *Id*. at 1127. It further concluded that even if evidence was lacking about the decedent's subjective expectations, "[g]iven the uniform medical and behavioral science evidence indicating that autoerotic activity ordinarily has a nonfatal outcome, 'the likelihood of death from autoerotic

activity falls far short of what would be required to negate coverage' under an accidental death policy." *Id*. (quoting *Todd*, 47 F.3d at 1456).

**2.      Evidence and Arguments Considered**

The parties dispute whether the Court should consider two items: (1) statistical information outside the administrative record and (2) Wolf's argument regarding the lack of an alcohol exclusion in LINA's policy.

First, Wolf cites a variety of statistical information in support of his contention that most impaired drivers, particularly men, do not expect injury when they drive under the influence of alcohol, and further that such expectation is reasonable. Dkt. 17 at 18. LINA moves to strike the statistical information as outside the administrative record, noting that Wolf provides no reason he could not have submitted this information in the claim process. Dkt. 19 at 3 (citing, among others, *Mongeluzo v. Baxter Travenol Long Term Disability Plan*, 46 F.3d 938, 944 (9th Cir. 1995)). Wolf filed a surreply opposing the motion to strike, arguing that the statistics he cites are "not subject to reasonable dispute" under Federal Rule of Evidence 201(b)(2). Dkt. 23. The accuracy of federal statistical information is typically not disputed. *See, e.g.*, *Gent v. CUNA Mut. Ins. Soc'y*, 611 F.3d 79, 84 n.5 (1st Cir. 2010).

However, Wolf's own calculation based on both federal and non-federal sources of the likelihood of a drunk driver killing himself or anyone else, Dkt. 17 at 18, is not such a nationally reported statistic and not subject to judicial notice. Even if it were, courts may consider external evidence in ERISA cases on de novo review only "'when circumstances *clearly establish* that additional evidence is *necessary* to conduct an

adequate de novo review of the benefit decision,'" *Opeta*, 484 F.3d at 1217 (quoting *Mongeluzo*, 46 F.3d at 944) (emphasis in original), which Wolf has not established, so the Court does not rely on his statistical information.

The statistical information related to the risks of drunk driving in particular circumstances is substantially less clear than the "uniform medical and behavioral science evidence" the Ninth Circuit considered in the controlling case, *Padfield*. 290 F.3d at 1127. The Court bears in mind both that "a number of courts have noted that, statistically, it is not reasonably foreseeable that a person driving drunk will be seriously injured or killed," *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 812 (10th Cir. 2010) (collecting cases), and that "'the extent of the risk will of course vary from case to case, depending on how intoxicated the driver is, how far he drives, how fast he drives, and how many other drivers and pedestrians are sharing the road with him,'" *Lennon v. Metro. Life Ins. Co.*, 504 F.3d 617, 621 (6th Cir. 2007) (quoting *United States v. Rutherford*, 54 F.3d 370, 376 (7th Cir. 1995)). The Court does not consider Wolf's specific statistical information.

Second, while "[a]rguments not raised in the opening brief are ordinarily waived," *Mesa Grande Band of Mission Indians v. Salazar*, 657 F. Supp. 2d 1169, 1173 (S.D. Cal. 2009) (citing *United States v. Romm*, 455 F.3d 990, 997 (9th Cir. 2006)), "a district court has the discretion to consider an argument first raised in a reply brief," *Lane v. Dep't of Interior*, 523 F.3d 1128, 1140 (9th Cir. 2008). The issue is raised in Wolf's response, not reply, and he also raised the issue of the lack of a negligence or recklessness exclusion in his internal appeal. Moreover, it is reasonably present within the universe of the caselaw

at issue such that considering it would not unfairly surprise LINA. *See, e.g.*, *Eckelberry v. Reliastar Life Ins. Co.*, 469 F.3d 340, 345 (4th Cir. 2006) (insurer did not apply per se drunk driving exclusion; "[i]f the insurer did not intend to cover any injury to a drunk driver, then drunk driving would have been a specific exclusion listed in the plan."). The Court does note that the presence of an alcohol exclusion may have mitigated the slippery slope of LINA's contention that those who drive recklessly foresee the consequences of their actions. Nevertheless, the Court reaches its conclusion in favor of Wolf even without relying on the policy's lack of an alcohol exclusion.

### 3. Analysis

The evidence of Scott's subjective expectations is very minimal. Wolf emphasizes that he was wearing his seatbelt, indicating an expectation of survival, and had his hazard lights on, at least potentially indicating he realized he was going the wrong way down a one-way street. Dkt. 18 at 11–12. LINA contends that these inferences are simply speculative and argues it is equally likely that Scott turned his hazard lights on by mistake in his altered mental state. Dkt. 19 at 7–8 (citing *Wineland v. Air & Liquid Sys. Corp.*, Case No. C19-0793RSL, 2021 WL 843166, at *4 (W.D. Wash. March 4, 2021)). Neither party suggests further inferences available from Scott's particular perspective or "background and characteristics," such as that he may have been suicidal. *See Padfield*, 290 F.3d at 1126 (citing *Wickman*, 908 F.2d at 1088).

The Court is skeptical that there is sufficient evidence to draw a reasoned conclusion about Scott's subjective expectations, and so turns to the objective prong of the *Wickman* test as adopted by the Ninth Circuit—whether a reasonable person, which

the background and characteristics similar to the insured, would have viewed the injury as "substantially certain" to occur as a result of Scott's intentional conduct. *Padfield*, 290 F.3d at 1127. The parties agree there is no per se rule that death caused by drunk driving is automatically excluded under accidental death policies. *See* Dkt. 19 at 9. LINA explains that it "recognizes that a benefit determination in a particular case depends on an analysis of the specific facts," but points out that many of Wolf's authorities "determined that under the available objective evidence, deaths associated with drunk driving were not 'accidental' for AD&D purposes and properly denied benefits." *Id*. at 9–10 (citing *Lennon v. Metro. Life Ins. Co.*, 504 F.3d 617 (6th Cir. 2007); *Eckelberry*, 469 F.3d 340; *Whinery*, 2012 WL 8652619; *Stamp v. Metro Life Ins. Co.*, 531 F.3d 84 (1st Cir. 2008)).

      LINA is correct that each of these cases found accidental death benefits were not payable following a death caused by drunk driving, where the decedent had a BAC above the legal limit and appeared to have been driving with some degree of recklessness. However, and critically, each of these cases were decided under the deferential arbitrary and capricious or abuse of discretion standards, not the de novo standard applicable here. *See Lennon*, 504 F.3d at 621–22 (arbitrary and capricious); *Eckelberry*, 469 F.3d at 343 (modified abuse of discretion standard—abuse of discretion applied with additional scrutiny because the insurer also acts as plan administrator); *Whinery*, 2012 WL 8652619, at *11 (abuse of discretion, albeit tempered by skepticism due to evidence of repeated application of improper policy definition); *Stamp*, 531 F.3d at 88 (arbitrary and capricious). Under a de novo standard, the question is much closer, and the balance tips in favor of Wolf.

This case is also distinguishable from *Williams v. Life Insurance Company of North America*, 117 F. Supp. 3d 1206 (W.D. Wash. 2015). LINA may be correct that the degree of recklessness in *Williams*, where the decedent drank heavily and veered into oncoming traffic while driving his motorcycle at 80 miles an hour around a curve in a 40 mile per hour zone pursuing an antagonist, is roughly analogous to the facts of this case. *Id.* at 1208–09. However, the policy in *Williams* was not governed by ERISA, so the Court looked to Washington common law to interpret the term "accident," which was undefined in the policy. *Id.* at 1211–12.

Washington law distinguishes between accidental means and accidental results and construes the term accident as objective, disregarding the insured's perspective. *Id.* at 1213 (citing *Johnson v. Bus. Men's Assur. Co. of Am.*, 38 Wn.2d 245, 249 (1951); *Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 685 (1990)). ERISA does not. In *Wickman*, the First Circuit rejected the accidental means/results distinction in favor of its focus on the insured's expectations. 908 F.2d at 1085–88

Given that the parties agree the *Wickman/Padfield* test applies, the analysis in *Bretelle v. Life Insurance Company of North America*, 691 F. Supp. 2d 1249, 1254 (S.D. Cal. 2010), is more analogous, though LINA fairly characterizes the circumstances there as less extreme than those at bar. In *Bretelle*, the decedent drove a motorcycle at high speed with a mild level of alcohol impairment. *Id.* at 1254. The district court concluded under the second prong of the *Padfield* test that a reasonable person in the decedent's shoes "would not have viewed the collision [with the curb near a curve with a curve advisory speed of 35 miles per hour] and subsequent death as substantially certain to

occur" "because death is not *substantially certain* to result *in any particular case* of driving a motorcycle at excessive speed (90 MPH) while impaired by an alcohol level between 0.05% and 0.10%." *Id.* (emphasis added).

If the Court was asked to consider whether the insurer abused its discretion or acted arbitrarily and capriciously in determining that Scott's death was an accident under the policy, the result might be different. *HCA Health Servs.*, 240 F.3d at 994. But under the de novo standard, the Court cannot conclude that a reasonable person in Scott's shoes would have viewed his death as substantially certain to occur as the result of his intentional conduct. There are certainly circumstances where a reasonable person would view death as "substantially certain" to occur when driving, such as driving into oncoming highway traffic or driving alongside a cliff without a guardrail with one's eyes closed. There is no doubt Scott was engaging in extremely reckless behavior, and this case presents a closer question than in *Padfield*, where "the uniform medical and behavioral science evidence indicat[ed] that autoerotic asphyxiation ordinarily has a nonfatal outcome." 290 F.3d at 1127.

Speeding along a one-way road the wrong direction in the dark alongside a body of water does not "fall far short" of what a reasonable person might expect to lead to death, *Padfield*, 290 F.3d at 1127, but neither would a reasonable person would view death as "substantially certain" in these circumstances, *c.f. Whinery*, 2012 WL 8652619, at *11 (insurer did not *abuse discretion* when concluded reasonable person would have viewed death as substantially certain to result from driving with a BAC nearly three times the legal limit while also having ingested cannabinoids and a number of prescription

medications, driving in circles at between 89 and 95 miles per hour at night in a 45 mph zone without a seatbelt). Therefore, the Court concludes that Scott voluntarily engaged in actions that led to a fatal injury, but a reasonable person would not have viewed that injury as substantially certain to occur as a result of his actions, rendering his death accidental under the policy. Wolf has established entitlement to accidental death benefits for Scott's death. Wolf's motion is thus GRANTED as to entitlement to benefits and LINA's cross-motion is DENIED.

**C.     Fees**

Wolf's request to bring a motion for fees and costs is GRANTED. In addition to addressing entitlement to fees and costs, the motion should specify the amount of interest sought and the basis for the award. Wolf may file this motion no later than June 11, 2021. LINA may respond no later than June 21, 2021, and Wolf may reply no later than June 25, 2021.

### III.  ORDER

Therefore, it is hereby **ORDERED** that LINA's motion for judgment under Rule 52, Dkt. 16, is **DENIED**, and Wolf's cross-motion, Dkt. 17, is **GRANTED** as to entitlement to benefits. Wolf may file a motion for fees, costs, and interest no later than June 11, 2021.

Dated this 25th day of May, 2021.

BENJAMIN H. SETTLE
United States District Judge